**TRENK, DiPASQUALE,
 DELLA FERA & SODONO, P.C.**
347 Mount Pleasant Avenue
West Orange, New Jersey 07052
(973) 243-8600
Richard D. Trenk, Esq.
Irena Goldstein, Esq.
Robert S. Roglieri, Esq.
*Proposed Counsel for Debtors and Debtors in Possession,*
*HarMac Corp., Mary Street Housing, LLC, 111 Cherry Street, Inc.,*
*137 West 5th Associates, LLC, and 301 3rd Street LLC*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> HARMAC CORP., <br><br> Debtor. | Chapter 11 <br><br> Case No. 16-29568 (___) <br> *Motion for Joint Administration Pending* |
| In re: <br><br> MARY STREET HOUSING, LLC, <br><br> Debtor. | Chapter 11 <br><br> Case No. 16-29573 (___) |
| In re: <br><br> 111 CHERRY STREET, INC., <br><br> Debtor. | Chapter 11 <br><br> Case No. 16-29576 (___) |
| In re: <br><br> 137 WEST 5TH ASSOCIATES, LLC, <br><br> Debtor. | Chapter 11 <br><br> Case No. 16-29578 (___) |

| | |
|---|---|
| In re:<br><br>301 3RD STREET LLC,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 16-29580 (___) |

**APPLICATION IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(c)(2)(B), 363(e), 507(b), FED. R. BANKR. P. 4001(b), AND D. N.J. L.B.R. 4001-4 FOR INTERIM AND FINAL ORDERS AUTHORIZING USE OF CASH COLLATERAL**

TO:　　THE HONORABLE JUDGES OF THE
　　　　UNITED STATES BANKRUPTCY COURT

　　　　HarMac Corp. ("Harmac"), Mary Street Housing, LLC ("MSH"), 111 Cherry Street, Inc. ("111 Cherry"), 137 West 5th Associates, LLC ("137 West") and 301 3rd Street LLC ("103 3rd", collectively, the "Debtors"), by and through their proposed counsel, Trenk, DiPasquale, Della Fera & Sodono, P.C., hereby move (the "Motion") before this Court for interim and final orders authorizing Debtors to use cash collateral pursuant to sections 105, 363(c)(2)(B), 363(e), and 507(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-4 of the District of New Jersey's Local Bankruptcy Rules (the "Local Bankruptcy Rules"). In support of the Motion, Debtors respectfully state as follows:

## JURISDICTION

1.　　This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2.　　This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

3.　　Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2

**BACKGROUND**

4. Debtors filed their voluntary Chapter 11 petitions on October 13, 2016 (the "Petition Date").

5. Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustees, examiners, or creditors' committees have been appointed in these cases.

6. Simultaneously with filing the Chapter 11 petitions, Debtors filed a motion for joint administration of Debtors' estates.

7. Debtors are owners of the following residential rooming houses and a commercial office building throughout Union County (hereinafter, collectively referred to as the "Properties"):

    a. Harmac owns an office building with four units, three of which are rented, located at 1429 US-22, Mountainside, NJ 07092 (the "Harmac Property").

    b. MSH owns a rooming house located at 1163-1165 Mary Street, Elizabeth, New Jersey, which has 14 rental units (the "MSH Property").

    c. 111 Cherry owns a rooming house located at 111-113 Cherry Street, Elizabeth, New Jersey, which has 14 rental units (the "111 Cherry Property").

    d. 137 West owns a rooming house located at 137 West 5th Avenue, Roselle, New Jersey, which has 20 rental units[1] (the "137 West Property").

    e. 301 3rd owns a rooming house located at 301 3rd Street, Elizabeth, New Jersey, which has 17 rental units (the "301 3rd Property").

8. A more detailed history and description of Debtors and their operations, together with the reasons for their Chapter 11 filings, are set forth in the Declaration of Joseph Sinisi, President of the Debtors, in Support of First Day Matters (the "Sinisi Declaration"), which is incorporated herein as if set forth in its entirety.

---

[1] Approval is pending with the New Jersey Room and Boarding Division to extend the number of approved units to 24. Final inspections are anticipated shortly.

**Secured Creditor Issues**

9.   On June 18, 2009, Harmac entered into a note (the "Harmac Note") in the principal amount of $600,000 with Financial Resources Federal Credit Union ("FRFCU"). Sinisi Declaration at ¶13. In connection with the Harmac Note, Harmac granted FRFCU a mortgage lien on the Harmac Property (the "Harmac Mortgage"). Id. Further, Harmac executed an Assignment of Rents and Landlord's Interests in Leases (the "Harmac Assignment of Rents"). Id.

10.   On September 20, 2010, Harmac, 111 Cherry, 137 West and 19 Edgar St., LLC entered into a Line of Credit Note in the principal amount of $1.5 million with FRFCU (the "LOC"). Id. at ¶14. In connection with the LOC, Harmac, 111 Cherry and 137 West granted FRFCU mortgage liens on their respective properties (each, the "Harmac LOC Mortgage," the "111 Cherry LOC Mortgage, " and the "137 West LOC Mortgage"). Id. Harmac, 111 Cherry and 137 West also entered into assignments of leases and rents. Id.

11.   On September 20, 2011, MSH entered into a note (the "MSH Note") in the principal amount of $550,000 with FRFCU. Id. at ¶15. In connection with the MSH Note, MSH granted FRFCU a mortgage lien on the MSH Property (the "MSH Mortgage"). Id. Further, MSH executed an Assignment of Rent's and Landlord's Interests in Leases (the "MSH Assignment of Rents"). Id.

12.   On June 22, 2012, 301 3rd entered into a note (the "301 3rd Note") in the principal amount of $187,500 with FRFCU. Id. at ¶16. On November 8, 2012, 301 3rd executed a Restated and Modified Note wherein the principal balance of the 301 3rd Note was increased to $468,750. Id. In connection with the 301 3rd Note, 301 3rd granted FRFCU a mortgage lien on

the 301 3rd Property (the "301 3rd Mortgage").  Id.  Further, 301 3rd executed an Assignment of Rent's and Landlord's Interests in Leases (the "301 3rd Assignment of Rents").  Id.

13. On June 1, 2015, each of the Debtors defaulted on their obligations to FRFCU under their respective note(s) and mortgage(s) by failing to make payment when due.  Id. at ¶17.

14. On September 4, 2015, FRFCU commenced an action in the Superior Court of New Jersey, Mercer Vicinage, Law Division captioned Financial Resources Federal Credit Union v. Mary Street Housing LLC, et al., Docket No. L-2034-15 (the "Law Division Action").  Id. at ¶18.  The Law Division Action sought a judgment on the MSH Note, 301 3rd Note, Harmac Note and the LOC.  Id.

15. On September 15, 2015, FRFCU commenced foreclosure actions in the Superior Court of New Jersey, Union Vicinage, Chancery Division captioned Financial Resources Federal Credit Union v. 301 Third Street LLC, Docket No. F-31473-15 (the "301 Foreclosure Action") and Financial Resources Federal Credit Union v. Mary Street Housing LLC, Docket No. F-31476-15 (the "MSH Foreclosure Action").  Id. at ¶19.  Through these actions, FRFCU seeks to foreclose on the MSH Mortgage and 301 3rd Mortgage.  Id.

16. On December 8, 2015, FRFCU commenced a foreclosure action in the Superior Court of New Jersey, Union Vicinage, Chancery Division captioned Financial Resources Federal Credit Union v. HarMac Corp., et al., Docket No. F-31687-15 (the "HarMac Foreclosure Action").  Id. at ¶20.  Through this action, FRFCU seeks to foreclose on the Harmac Mortgage, the Harmac LOC Mortgage, the 137 LOC Mortgage and the 111 LOC Cherry Mortgage.  Id.

17. On June 10, 2016, an Order Granting Summary Judgment (the "Judgment") was entered in the Law Division Action.  Id. at ¶21. Judgment was entered against the Debtors in the following amounts:

5

| **Debtor** | **Amount** |
|---|---|
| MSH | $576,078.22 |
| Harmac | $555,216.42 |
| | $1,599,150.75* |
| 301 3rd | $496,296.76 |
| 111 Cherry | $1,599,150.75* |
| 137 West | $1,599,150.75* |

*This is one indebtedness under the LOC. Against this indebtedness, the amount of $277,000 was paid on June 23, 2016 when Edgar Street, LLC was sold. Based upon the foregoing, the approximate debt due to FRFCU is $2,929,740. Id.

18. The Judgment was also entered against Mr. Sinisi, personally, in the total amount of $3,518,424.99. Id. at ¶22.

19. On July 22, 2016, the Honorable Joseph P. Perfilio, J.S.C. entered identical orders in the Harmac Foreclosure Action, 301 3rd Foreclosure Action and MSH Foreclosure Action directing the Debtors and tenants of each respective property to turnover all rents to FRFCU (collectively, the "Rent Turnover Orders"). Id. at ¶23. The Rent Turnover Orders also required Debtors to provide FRFCU with copies of all leases and rent rolls for the Properties. Id. Further, the Rent Turnover Orders restrained and prohibited the Debtors and their principals from interfering with FRFCU's right to collect rents. Id. Finally, the Rent Turnover Orders permitted FRFCU to file the appropriate dispossession actions in the event a tenant at any of the Properties failed to pay rental payments to FRFCU. Id.

20. After obtaining the Rent Turnover Orders, FRFCU posted notices at the Properties advising the tenants to pay all rents directly to FRFCU. Id. at ¶24. In addition, the Debtors have paid to FRFCU any rents paid directly to them. Id.

21. FRFCU, however, has not been paying certain costs necessary to maintain the Properties, including the utilities. Id. As a result, to ensure that the Debtors' tenants were not left without water, gas and electricity, and that the Debtors did not lose their licenses to operate,

Mr. Sinisi personally lent money to the Debtors through payment of the utility bills. Id. The monies advanced include the following:

| **PAYEE** | **PROPERTY** | **AMOUNT** |
|---|---|---|
| PSE&G | 301 3rd Street | $ 186.90 |
| PSE&G | 301 3rd Street | $ 126.75 |
| NJ American Water | 137 W. 5th Avenue | $1,000.00 |
| Elizabethtown Gas | 137 W. 5th Avenue | $4,128.70 |

Id.

22. Thereafter, on or about September 13, 2016, FRFCU filed a Motion for Order Appointing Receiver, Compelling Turnover of All Rents, Profits, Security and Proceeds and Authorizing Receiver to Offer for Sale the Mortgaged Real Property Pursuant to N.J.S.A. 2A:50-31 (the "Receivership Motions") in the Harmac Foreclosure Action, the MSH Foreclosure Action and the 301 3rd Foreclosure Action. Id. at ¶25.

23. Debtors intend to work amicably with FRFCU for the benefit of all parties.

## RELIEF REQUESTED AND REASONS THEREFOR

24. By this Motion, Debtors seeks the preliminary and final use of cash collateral to preserve its assets so as to maintain and maximize its value for the benefit of all parties-in-interest, and to also continue providing services to their tenants.

25. Pursuant to Bankruptcy Code section 363(a), cash collateral is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents . . . and the proceeds thereof." 11 U.S.C. § 363(a).

26. By operation of Bankruptcy Code section 363(c)(2) and Bankruptcy Rule 4001(b), a debtor may not use cash collateral unless the entity that has an interest in such cash collateral consents, or until the Court authorizes the use of cash collateral after notice and a hearing and upon a finding that the interest of the secured party is adequately protected.

27. Although "adequate protection" is not defined in the Bankruptcy Code, courts generally describe it as "a balancing of the debtor's and a creditor's respective harm," see In re Carson, 34 B.R. 502, 505 (Bankr. D. Kan. 1983) (citation omitted), and the legislative history of Bankruptcy Code section 361 reflects congressional intent to give courts flexibility to fashion adequate protection in light of the facts of each case and general equitable principles. In re 5-Leaf Cover Corp., 6 B.R. 463, 466 (Bankr. S.D. W. Va. 1980).

28. In addition, Bankruptcy Code section 361 sets forth three (3) non-exclusive[2] methods of how an interest in property may be adequately protected, stating as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 .S.C. § 361.

29. The "interest" of a secured creditor which is entitled to be protected is the value of the secured creditor's allowed secured claim; that is, the amount of the secured creditor's

---

[2] Courts have held that the adequate protection mechanisms enumerated by Bankruptcy Code section 361 are not exhaustive. See In re Miller, 734 F.2d 1396 (9th Cir. 1984); In re Family Place Partnership, 95 B.R. 166 (Bankr. E.D. Cal. 1989).

8

claim up to the value of the collateral upon which the secured creditor has a lien as of the relevant valuation date. In re Shriver, 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983); In re South Village, Inc., 25 B.R. 987, 994 (Bankr. D. Utah 1982). The alleged secured creditor is only entitled to assurance that the value of its lien will not decrease as a result of the automatic stay and, if it does, that it will receive something as compensation for the decrease. In re Ramco Well Service, Inc., 32 B.R. 525, 531 (Bankr. W.D. Okla. 1983). Therefore, where the value of the collateral is not declining, a debtor need not do anything for the secured creditor as it is adequately protected. Id.; accord, In re Price, 40 B.R. 578, 580 (Bankr. N.C. Tex. 1984).

30. Furthermore, courts have held that the existence of an equity cushion can also provide adequate protection. In re Gallegos Research Group, Corp., 193 B.R. 577, 584 (Bankr. D. Col. 1995) (oversecured creditors may not be entitled to cash payments or post-petition liens because they are adequately protected through the existence of a value cushion).

31. In the present matter, Debtors' secured creditor will be adequately protected during the pendency of Debtors' bankruptcy case. With regard to Debtors' assets: (a) a recent appraisal of the property owned by Harmac evidences a value of $765,000 (See **Exhibit A**); (b) a recent appraisal of the property owned by MSH evidences a value of $720,000 (See **Exhibit B**); (c) a recent appraisal of the property owned by 111 Cherry evidences a value of $625,000 (See **Exhibit C**); (d) a recent appraisal of the property owned by 137 West evidences a value of $1,125,000 (See **Exhibit D**); and (e) a recent appraisal of the property owned by 301 3rd evidences a value of $550,000 (See **Exhibit E**). Thus, in total, the properties owned by Debtors have a value of over $3,785,000. Accordingly, FRFCU has an equity cushion of approximately $855,260 based on the total value of all the properties.

32. On a going-forward basis Debtors also will be able to adequately protect their secured creditor through future revenues. As set forth in the attached budget annexed hereto as **Exhibit F**, there are funds sufficient remaining to protect the secured lender. Moreover, the Debtors propose only paying amounts that are absolutely necessary to maintain the buildings and the Debtors' business. These amounts are necessary to protect the health and welfare of the tenants, something to date the secured lender has not done.

33. Assuming FRFCU contends that the funds are not property of the estate pursuant to First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P.), 59 F.3d 423 (3d Cir. 1995), this Court should not allow FRFCU to jeopardize the health and welfare of the Debtors' tenants by not providing for utility coverage and other basic services. Allowing the Debtors access to funds sufficient to pay for utilities and other ordinary course expenses sufficient to keep the Debtors operating is in the best interests of all parties.

34. Moreover, a denial of the use of alleged cash collateral to fund Debtors' day-to-day operations will severely harm Debtors at a critical time, effectively hindering its ability to reorganize. Essentially, without the authority to use alleged cash collateral, Debtors cannot continue to operate; that will cause a loss of going concern value, and preclude the ability to reorganize, thereby preventing creditors from realizing upon reorganization value.

35. Debtors have the ability to reorganize within a reasonable period of time and to make distributions for the benefit of all creditors.

36. Debtors are prepared to discuss with all of its creditors the development of both a financial and operational restructuring plan. The authority to use alleged cash collateral will enable Debtors to engage in those discussions and accomplish its reorganization, while operating in the ordinary course.

## TIMING AND NOTICES

37. Debtors respectfully seek a two-part hearing process.

38. First, pursuant to Bankruptcy Rule 4001(b)(2), Debtors seek a preliminary hearing on the use of Cash Collateral in accordance with the Budget on less than fifteen (15) days' notice.

39. Second, Debtors seek a final hearing on at least fifteen (15) days' notice. At a minimum, Debtors proposes to give notice pursuant to Bankruptcy Rule 4001(b)(1) and (3) to the Office of the United States Trustee, all secured creditors, Debtors' twenty (20) largest unsecured creditors, any other parties claiming an interest in the Cash Collateral, and any party who has requested notice.

## NO PRIOR REQUEST

40. No prior application for the same or similar relief has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, Debtors respectfully requests that the Court (i) enter an interim order, substantially in the form submitted herewith, authorizing the use of alleged cash collateral on an interim basis; (ii) enter a final order, substantially in the form submitted herewith, authorizing the use of alleged cash collateral on a final basis; and (iii) grant such other and further relief as the Court deems just and proper.

                        **TRENK, DIPASQUALE,
DELLA FERA & SODONO, P.C.**
*Proposed Counsel for Debtors and Debtors in Possession, HarMac Corp., Mary Street Housing, LLC, 111 Cherry Street, Inc., 137 West 5th Associates, LLC, and 301 3rd Street LLC*

By:   /s/ *Richard D. Trenk*
      RICHARD D. TRENK

Dated: October 13, 2016

4832-5695-5961, v. 1